*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH WAGNER,

       Plaintiff-Appellant,

v

LOURENS J. WILLEKES II, M.D., and GRAND
RAPIDS THORACIC SURGERY, PLLC,

       Defendants-Appellees.

UNPUBLISHED
March 25, 2021

No. 350574
Kent Circuit Court
LC No. 19-004652-NH

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, Joseph Wagner, appeals the trial court's order granting summary disposition pursuant to MCR 2.116(C)(7) (dismissal appropriate because of release) to defendants Lourens J. Willekes II, M.D., and Grand Rapids Thoracic Surgery, PLLC,[1] and denying plaintiff's motion for leave to amend his complaint. Plaintiff contends on appeal that the trial court abused its discretion by denying his motion for leave to amend. We agree and so reverse and remand.

In February 2015, plaintiff was injured in an auto accident and suffered multiple rib fractures. On March 11, plaintiff was treated by defendant, a thoracic surgeon, and he recommended that plaintiff undergo a rib plating surgery that involved placing metal plates onto four of plaintiff's ribs. Two months after defendant performed the procedure, plaintiff had to be readmitted to the hospital because all the rib plates had fractured and a second surgery was required to remove and replace them. Defendant told plaintiff that the plates had cracked because they were defectively manufactured and that he was going to send them back to the manufacturer, Biomet, for examination.

---

[1] Dr. Willekes and his practice are both defendants. In this opinion we will refer to Dr. Willekes as defendant.

On March 14, 2017, plaintiff served defendants with a Notice of Intent to File Claim (NOI), which is a pre-filing requirement in medical malpractice cases.

On July 18, 2017, an employee of Biomet wrote defendant informing him that Biomet's inspection had found no defects and that the failure was due to the fact that defendant had fixated plaintiff's posterior ribs with plates intended for use only on anterior ribs as the plates had a "microfixation sternal closure system." In other words, the letter squarely put the blame on defendant for inserting the wrong device. It appears from the record that plaintiff did not receive a copy of the Biomet letter.

About a month later, before plaintiff filed suit, he and defendant entered into an unusual arrangement. Defendant signed an affidavit stating that he had not used the "microfixation sternal closure system" as Biomet claimed and instead had used Biomet plates intended for posterior-lateral repair, i.e., that he used the proper plates and that they were defective. Specifically, he averred that "the Biomet Microfixation Sternal Closure System . . . was not the plating system utilized in Mr. Wagner's case. That plating system involves the use of Sternolock Plates, which are square or H shaped, for fixation of the sternum and anterior chest." In exchange for this testimony, plaintiff released defendant from liability. However, when deposed in plaintiff's suit against Biomet, defendant admitted that the part numbers of the plates ordered for surgery matched those of the sternal closure system and that the shape of the plates as shown on post-operation x-rays were consistent with a sternal closing device as asserted by Biomet and not with the rib plates he described in his affidavit. In other words, what he said in his affidavit was false and he implanted the wrong plates.

Plaintiff then filed the instant suit and asserted he should not be held to the release because defendant innocently misrepresented the actual events and what he believed occurred regarding the plates. However, defendants pointed out that innocent misrepresentation is not grounds for setting aside a release and filed a motion to dismiss. Plaintiff responded to the motion with his own motion to amend the complaint to add a count of fraudulent misrepresentation which, if proven, would be grounds to set aside the release. See e.g., *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 640; 534 NW2d 217 (1995) ("Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party."). The trial court denied the request to amend and dismissed the case. The court explained that adding a count of fraudulent misrepresentation was futile because fraudulent misrepresentation cannot exist if the complaining party had the means to discover the fraud and that plaintiff could have done so with the documentation used by Biomet at defendant's deposition.[2]

"A trial court should freely grant leave to amend a complaint when justice so requires." *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013), citing MCR 2.118(A)(2).

---

[2] We review for an abuse of discretion a trial court's decision on a motion to amend a complaint. *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008).

"Leave to amend should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin Estate*, 278 Mich App 47, 51-52; 748 NW2d 583 (2008). In *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted), we summarized three ways an amendment can be futile: "(1) ignoring the substantive merits of the claim, it is legally insufficient on its face, (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." Put another way, "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Shah v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018) (quotation marks and citation omitted).

In *Titan Ins Co v Hyten*, 491 Mich 547, 571-572; 817 NW2d 562 (2012), the Michigan Supreme Court explained the elements of fraudulent misrepresentation as follows:

> (1) the defendant made a material representation, (2) it was false, (3) the defendant knew it was false when made, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) it was made with the intention to induce reliance by the plaintiff, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff thereby suffered injury.

Defendants argue that the trial court properly concluded that plaintiff could not prevail in a case of intentional misrepresentation because the x-rays and part numbers were available to plaintiff prior to the execution of the affidavit and release and that he should therefore have discovered the fraud. Defendants rely on *Nieves v Bell Industries, Inc,* 204 Mich App 459, 464; 517 NW2d 235 (1994), for the principle that "[t]here can be no fraud where a person has the means to determine that a representation is not true."

We disagree because the cases cited by defendant were decided before the Supreme Court's decision in *Titan*, 491 Mich 547. In *Titan*, the Supreme Court held that an intentional fraud claim may be pursued even if the fraud was "easily ascertainable." The Court went on to explain:

> As is evident, although the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence. Stated differently, these doctrines do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud. [*Id*. at 557.]

Thus, plaintiff may sue for defendant's alleged intentional misrepresentation even if he could have discovered that it was false through the exercise of reasonable diligence.[3] Further, the pre-*Titan*

---

[3] If, as defendant claims, the correct nature of the plate should have been clear to plaintiff, a layperson, it is difficult to understand how defendant can also claim that his inaccurate description of the plate in his affidavit was unintentional.

cases involved situations in which the party alleging fraud was provided with written documents provided by and for the allegedly fraudulent party that unambiguously advised the other party of the actual facts.[4] Defendants did not present such evidence at the time of the summary disposition motion in this case.[5]

Accordingly, we reverse and remand for the court to accept plaintiff's amended complaint for filing and for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering

---

[4] In *Webb v First of Mich Corp*, 195 Mich App 470, 474-475; 491 NW2d 851 (1992), the defendant alleged fraud by a broker who allegedly advised him that the proposed investment was "risk free," but the plaintiff had received and signed for a prospectus that on its front page referenced that the investment carried risk and referred to several pages in the document describing those risks. In *Nieves*, 204 Mich App at 463, the plaintiff claimed that an agent of his employer had told him that his employment was not at-will. However, the plaintiff agreed that he had received and read the employment contract he signed that specifically described the job as at-will and he conceded that the employer's agent did not have the authority to override the contract's terms. *Id*. at 464-465. In the instant case, defendant never told plaintiff that he used the incorrect plates and never provided him with information that conclusively demonstrated that defendant's statements were incorrect. Thus, plaintiff did not have conclusive information that the incorrect plates were used and lacked the technical knowledge to know that the defendant's affidavit was false.

[5] We also note that defendant's proposed testimony as stated in his affidavit was the consideration for the release. However, he did not testify consistent with the affidavit and so materially breached the agreement. Rescission of the release would be justified on this basis. See *Adell Broadcasting v Apex Media Sales*, 269 Mich App 6, 13-14; 708 NW2d 778 (2005) ("[R]escission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated.") (quotation marks and citations omitted).

-4-